# United States Court of Appeals
# for the Fifth Circuit

No. 23-70009

United States Court of Appeals
Fifth Circuit

**FILED**
January 2, 2025

Lyle W. Cayce
Clerk

Terry Pitchford,

*Petitioner—Appellee*,

*versus*

Burl Cain, *Commissioner, Mississippi Department of Corrections*; Lynn Fitch, *Attorney General for the State of Mississippi*,

*Respondents—Appellants*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:18-CV-2

_____

Before Haynes, Willett, and Duncan, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

The district court granted Terry Pitchford a writ of habeas corpus based on the claim that the prosecutor in his capital murder trial struck four potential jurors in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). On appeal, the State of Mississippi argues that the district court failed to defer to the Mississippi Supreme Court's decision that Pitchford waived his *Batson* claims by failing to challenge the State's race-neutral reasons for the strikes. Concluding the state court did not err in applying *Batson*, we reverse and render judgment dismissing Pitchford's habeas corpus petition.

No. 23-70009

## I.

A Mississippi jury convicted Pitchford of capital murder in 2006 for participating in an armed robbery during which the store owner, Reuben Britt, was shot to death by Pitchford's accomplice. *Pitchford v. State*, 45 So. 3d 216, 222–23 (Miss. 2010). Pitchford confessed to his role in the crime. *Id.* at 223.

Because Pitchford's habeas claim concerns juror selection, we recount the relevant parts of *voir dire*. The trial court, without objection, narrowed the pool of potential jurors to 36 white potential jurors and five black potential jurors. *Ibid.* Pitchford used all 12 of his peremptory strikes on white potential jurors, while the State used three peremptory strikes on white potential jurors and four on black potential jurors. *Ibid.* Pitchford's counsel objected to the strikes of potential black jurors under *Batson*. Counsel argued that "this is already a disproportionally white jury for the population of this county," and that the strikes were "a pattern of disproportionately challenging African-American jurors."

The court ruled that Pitchford made a *prima facie* showing of discrimination and required the State to give race-neutral reasons for the strikes. *Pitchford*, 45 So.3d at 226. The State provided these reasons: (1) Carlos Ward had "no opinion" on the death penalty, had several speeding violations, and shared similarities with Pitchford such as age and marital status; (2) Linda Lee had "mental problems" (according to the police chief), police had been dispatched repeatedly to her home, and she was late returning to *voir dire*; (3) Christopher Tillmon had a brother convicted of a similar offense (manslaughter); and (4) Patricia Tidwell was a known drug user, and her brother had been convicted of battery in the same court and was currently facing charges in a shooting case in that county. *Id.* at 226–27.

No. 23-70009

The court accepted these reasons and proceeded with juror selection. *Id.* at 227; Pitchford's counsel did not object or make further argument challenging the State's reasons for the strikes.

After the jury was selected, Pitchford's counsel—Ms. Steiner and Mr. Baum—asked to approach the bench and the following colloquy occurred:

MS. STEINER: At some point the defense is going to want to reserve both its *Batson* objection and a straight for Tenth Amendment [sic] racial discrimination.[1]

THE COURT: You have already made it in the record so I am of the opinion it is in the record.

MS. STEINER: I don't want to let the paneling of the jury go by without having those objections.

THE COURT: I think you already made those, and they are clear in the record. For the reasons previously stated, first the Court finds there to be no—well, all the reasons were race neutral as to members that were struck by the district attorney's office. And so the, the Court finds there to be no *Batson* violation. And then as to the other issues, the Court has already ruled that based on prior rulings from the United States Supreme Court and the State of Mississippi that jury selection was appropriate. As I say, they are noted for the record.

MS. STEINER: Allow us to state into the record there is one of 12— of fourteen jurors, are non-white, whereas this county is approximately, what, 40 percent?

MR. BAUM: The county is 40 percent black.

---

[1] The latter half of this sentence appears to have been erroneously transcribed. However, that does not affect our analysis.

No. 23-70009

THE COURT:    I don't know about the racial makeup, but I will note for the record there is one regular member of the panel that is black, African-American race.

MS. STEINER:    And only one.

THE COURT:    Right. There is one period.

MS. STEINER:    Right. Thank you.

The jury ultimately found Pitchford guilty and subsequently sentenced him to death. *Pitchford*, 45 So. 3d at 223.

Pitchford appealed his conviction and sentence to the Mississippi Supreme Court. With respect to his *Batson* challenge, Pitchford argued that a comparative juror analysis revealed the State's proferred race-neutral reasons to be pretextual. *See id.* at 227 (recounting Pitchford's argument "that some of the reasons the State proffered for its strikes of blacks were also true of whites the State did not strike"). The Mississippi Supreme Court ruled, however, that Pitchford "did not present these arguments to the trial court during the voir dire process or during post-trial motions." *Ibid*. Accordingly, the court concluded no *Batson* violation had occurred because "Pitchford provided the trial court no rebuttal to the State's race-neutral reasons." *Ibid.*[2]

After exhausting his state court remedies, Pitchford filed this habeas corpus petition in federal district court, again raising his *Batson* claim. The district court granted Pitchford a writ of habeas corpus.

The district court reasoned that the state trial court "*seemingly* failed to conduct the third *Batson* inquiry," in which a court determines whether

_____

[2] Pitchford also argued that "the totality of the circumstances show[ed] that the State's peremptory challenges were exercised in a discriminatory manner." *Pitchford*, 45 So. 3d at 227. But the Mississippi Supreme Court ruled this was simply Pitchford's "pretext argument in another package" and rejected it for the same reasons. *Ibid.*

the defendant proved the State's purposeful discrimination in striking jurors. *Pitchford v. Cain*, 706 F. Supp. 3d 614, 624 (N.D. Miss. 2023); *see Batson*, 476 U.S. at 97–98. The court did acknowledge, though, that the trial court may have "implicitly" done so. *Ibid.* The court also disagreed with the Mississippi Supreme Court that Pitchford "waived" the pretext issue by failing to argue it at *voir dire*. *Id.* at 623. To the contrary, the court found that Pitchford's counsel objected to the prosecutor's reasons at the subsequent bench conference. *Id.* at 624. The court then noted that it found the dissenting Justice's pretext analysis "persuasive" but "ma[de] no finding as to whether it ultimately agree[d] with" it. *Id.* at 625–26; *see Pitchford*, 45 So. 3d at 264–66 (Graves, P.J., dissenting). Finally, the court added that the Mississippi Supreme Court should have also "examined" the history of *Batson* violations by Pitchford's prosecutor in the *Flowers* litigation. *Id.* at 627; *see Flowers v. Mississippi*, 588 U.S. 284 (2019). While not "dispositive," the *Flowers* litigation would have been "at the very least, informative." *Ibid*.

Based on this reasoning, the district court ruled that "the state courts' rejection of Pitchford's *Batson* claim was contrary to or an unreasonable application of clearly established federal law." *Ibid*. It ordered the State to release or retry Pitchford within 180 days. *Id.* at 628.

The State timely appealed, and the district court stayed its judgment pending appeal.

## II.

"In an appeal from a district court's grant of habeas relief, we review the court's findings of fact for clear error and its conclusions of law *de novo*." *Russell v. Denmark*, 68 F.4th 252, 261 (5th Cir. 2023).

No. 23-70009

### III.

Because this case is governed by the the Antiterrorism and Effective Death Penalty Act (AEDPA), the district court was authorized to grant Pitchford a writ of habeas corpus only if the Mississippi Supreme Court's[3] "decision . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

This standard demands much more than state court error. *See Burt v. Titlow*, 571 U.S. 12, 18 (2013) (holding that a state court decision "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010))). "[E]ven 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). Rather, the state court must have made an "objectively unreasonable" application of a Supreme Court "holding[ ]." *Ibid.* (citations omitted). That is, its decision must be "'so lacking in justification' that the error is 'beyond any possibility for fairminded disagreement.'" *Russell*, 68 F.4th at 261–62 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Absent that kind of "extreme malfunction[ ]" in the state system, *Brown*, 596 U.S. at 133, the writ "shall not be granted." 28 U.S.C. § 2254(d).

---

[3] Under AEDPA, federal courts review the last state court decision that adjudicated the petitioner's claim on the merits. *See Brown v. Davenport*, 596 U.S. 118, 141–42 (2022); *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014). Here, that is the Mississippi Supreme Court's adjudication of Pitchford's *Batson* claim.

No. 23-70009

On appeal, the State argues that the district court erred in granting the writ for several reasons. We consider each in turn.

A.

First, the State argues the district court erred in finding the trial court skipped *Batson*'s third step. We agree.

Under the familiar *Batson* framework, (1) a defendant must make a *prima facie* showing that a prosecutor made racially discriminatory strikes; (2) if he does, the State must then present race-neutral reasons for the strikes; and (3) the trial court must then determine whether the defendant has proved purposeful discrimination. *See Miller-El v. Dretke*, 545 U.S. 231, 239 (2005) ("*Miller-El II*") (citing *Batson*, 476 U.S. at 97, 98 n.20, 98). "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Rice v. Collins*, 546 U.S. 333, 338 (2006) (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)); *see also United States v. Bentley-Smith*, 2 F.3d 1368, 1373 (5th Cir. 1993) (same).

We agree with the State that the trial court did not omit *Batson*'s third step. In finding otherwise, the district court appeared to reason that *Batson* required the trial court to make explicit findings concerning the validity of the State's proferred race-neutral reasons. No Supreme Court holding demands that, however.

To the contrary, the Supreme Court has left *Batson*'s implementation up to the discretion of trial courts. *Batson* itself "decline[d] . . . to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges." 476 U.S. at 99; *see also Ford v. Georgia*, 498 U.S. 411, 423 (1991) (explaining that *Batson* "left it to the trial courts, with their wide 'variety of jury selection practices,' to implement *Batson* in the first instance" (citing *Batson*, 476 U.S. at 99 n.24)). In line with that, the Supreme

7

No. 23-70009

Court has never held that a court properly performs *Batson*'s third step only by making explicit findings on pretext and discrimination.

Indeed, our own precedent has "explicitly rejected [the] requirement" that courts "make explicit factual findings during *Batson*'s third step." *United States v. Ongaga*, 820 F.3d 152, 166 (5th Cir. 2016) (citing *United States v. Thompson*, 735 F.3d 291, 300–01 (5th Cir. 2013)).[4] Rather, a court "may make 'implicit' findings while performing the *Batson* analysis." *Ibid.* (quoting *McDaniel*, 436 F. App'x at 405 (unpublished) (collecting cases)). The district court itself suggested this is exactly what occurred here. "One could certainly argue," the court remarked, that the trial court "implicitly found" no discrimination when, at the subsequent bench conference, the trial court announced that it "finds there to be no *Batson* violation" and that "jury selection was appropriate."[5]

Accordingly, we conclude that the trial court did not erroneously omit *Batson*'s third step. It follows *a fortiori* that, by affirming the trial court's application of *Batson*, the Mississippi Supreme Court's decision was not for that reason "contrary to" or an "unreasonable application" of *Batson*.

-----

[4] *See also United States v. Perry*, 35 F.4th 293, 331 (5th Cir. 2022) (rejecting argument that "the trial court erred by failing to explicitly reach" step three and recognizing as sufficient "an implicit finding . . . that the Government's explanation was credible"); *United States v. McDaniel*, 436 F. App'x 399, 405–06 (5th Cir. 2011) (per curiam) ("[A] district court will not be reversed for failing to explicitly detail its findings at each step in the *Batson* analysis, if we are convinced that the necessary determinations were 'implicitly' made.").

[5] The district court nonetheless suggested that "Pitchford was seemingly given no chance to rebut the State's explanations and prove purposeful discrimination." The record does not reflect that, however. The district court never cut off any request by Pitchford's counsel to object to the State's proffered race-neutral reasons and, in fact, the court allowed defense counsel to clarify their objections during a subsequent bench conference they themselves requested.

No. 23-70009

B.

The State next argues the district court erred by finding that Pitchford did not "waive" his pretext argument. As noted, the Mississippi Supreme Court refused to consider Pitchford's pretext arguments on the ground that Pitchford "did not present these arguments to the trial court during the *voir dire* process or during post-trial motions." *Pitchford*, 45 So. 3d at 227. We again agree with the State.

The Supreme Court has held that state courts may adopt rules concerning when *Batson* challenges may be raised. *See, e.g.*, *Ford*, 498 U.S. at 423 (holding "a state court may" "[u]ndoubtedly . . . adopt a general rule that a *Batson* claim is untimely if it is raised for the first time on appeal, or after the jury is sworn, or before its members are selected"). Moreover, we have specifically held that a defendant's failure to challenge a prosecutor's race-neutral explanation constitutes waiver. *See, e.g.*, *United States v. Arce*, 997 F.2d 1123, 1127 (5th Cir. 1993) ("By failing to dispute the prosecutor's short-term employment [*Batson*] explanation in the district court, defendants have waived their right to object to it on appeal.").[6]

Here, the Mississippi Supreme Court relied on an analogous rule in refusing to consider Pitchford's unraised pretext arguments. *See Pitchford*, 45 So. 3d at 227 (relying on rule that, "[i]f the defendant fails to rebut [the State's race-neutral reasons], the trial judge must base his [or her] decision on the reasons given by the State" (quoting *Berry v. State*, 802 So. 2d 1033, 1037 (Miss. 2001))). The court also cited another of its decisions, *Manning v. State*, 735 So. 2d 323, 339 (Miss. 1999) (quotation omitted), which held that

---

[6] *See also United States v. Ceja*, 387 F. App'x 441, 443 (5th Cir. 2010) (per curiam) ("[A] defendant waives objection to a peremptory challenge by failing to dispute the prosecutor's explanations." (quotation omitted)).

"[i]t is incumbent upon a defendant claiming that proffered reasons are pretextual to raise the argument before the trial court. The failure to do so constitutes waiver."

The district court did not rule that relying on such waiver principles was an unreasonable application of (or even inconsistent with) *Batson*. Nor could it have: no Supreme Court holding supports that view. The court instead ruled that the Mississippi Supreme Court erred in its waiver analysis because Pitchford sufficiently objected at the bench conference. But even assuming the district court was correct, that would not entitle Pitchford to habeas relief. It is well-settled that even an erroneous state ruling is not enough to overcome AEDPA's relitigation bar.[7]

In any case, the Mississippi Supreme Court's waiver ruling was correct. At the bench conference, Pitchford objected, not on the basis of pretext or comparative juror analysis, but only on the ground that the county was 40% black. That was not remotely sufficient to raise an objection to the State's race-neutral reasons. *See, e.g.*, *Arce*, 997 F.2d at 1127 (explaining that "a defendant waives objection to a peremptory challenge by failing to dispute the prosecutor's explanations" (citing *United States v. Rudas*, 905 F.2d 38, 41 (2d Cir. 1990))).[8]

---

[7] *See, e.g.*, *White*, 572 U.S. at 419 (Under AEDPA, "an unreasonable application of [Supreme Court] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." (cleaned up)); *Williams v. Taylor*, 529 U.S. 362, 365 (2000) (Under AEDPA, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law.").

[8] *Wright v. Harris County*, 536 F.3d 436, 438 (5th Cir. 2008) (explaining that in *Arce*, "the government offered two reasons for its strike, but defendants contested only one of them," and so, "[b]y failing to dispute the prosecutor's . . . explanation in the district court, defendants have waived their right to object to it on appeal"); *Haynes v. Quarterman*, 526 F.3d 189, 200 (5th Cir. 2008) (explaining that a defendant may "acquiesce" in

No. 23-70009

Accordingly, the district court erred in concluding that Pitchford was entitled to habeas relief on this ground.

## C.

The State next argues that the district court erred by suggesting the Mississippi courts were obliged to consider the "totality" of the facts bearing on Pitchford's pretext claims, including the facts in the *Flowers* litigation. We agree with the State that the Mississippi courts did not err by refusing to consider such facts, which were not argued by Pitchford during *voir dire* or post-trial.

Pitchford directs us to no Supreme Court holding that supports the district court's approach, and our own precedent squarely rejects it. As we have explained, "it is not clearly established that habeas courts *must*, of their own accord, uncover and resolve all facts and circumstances that may bear on whether a peremptory strike was racially motivated when the strike's challenger has not identified those facts and circumstances." *Ramey v. Lumpkin*, 7 F.4th 271, 280 (5th Cir. 2021). Nor is there "any *requirement* that a state court conduct a comparative juror analysis at all, let alone *sua sponte*." *Chamberlin v. Fisher*, 885 F.3d 832, 838 (5th Cir. 2018) (en banc).[9]

_____

proffered race-neutral reasons "[b]y failing to dispute the Government's explanations" for them (quoting *Arce*, 997 F.2d at 1127)).

[9] In a Rule 28(j) letter filed after oral argument, Pitchford cites cases supposedly standing for the proposition that a litigant does not forfeit a comparative juror analysis by failing to raise it at trial. *See, e.g.*, *Reed v. Quarterman*, 555 F.3d 364, 372–73 (5th Cir. 2009); *Woodward v. Epps*, 580 F.3d 318, 338 (5th Cir. 2009). To the extent any of those cases support that notion, however, they predate our en banc decision in *Chamberlin*, which held that a state court need not conduct a comparative juror analysis where, as here, a litigant fails to raise the argument at trial. *See, e.g.*, *Chamberlin*, 885 F.3d at 838–39 (holding there is no "new procedural rule that state courts must conduct comparative juror analysis when evaluating a *Batson* claim") (quoting *McDaniels v. Kirkland*, 813 F.3d 770, 783 (9th Cir. 2015) (Ikuta, J., concurring)).

Accordingly, we have held that a state decision rejecting a *Batson* claim is not unreasonable for failing to "consider[ ] the full panoply of facts and circumstances," when the petitioner "did not direct the state courts to what he [later] assert[ed] are [the] relevant facts and circumstances." *Ramey*, 7 F.4th at 280.

Nor were the Mississippi courts required to consider the relevance of the *Flowers* litigation. To begin with, Pitchford never raised this argument at *voir dire* and so cannot rely on it now to impugn the state courts' application of *Batson*. Furthermore, the Supreme Court's *Flowers* decision could not have informed the analysis, because it was issued in 2019—nine years after the Mississippi Supreme Court rejected Pitchford's *Batson* claim. *See Williams*, 529 U.S. at 390 ("The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established *at the time his state-court conviction became final*." (emphasis added)). Moreover, to the extent the district court thought the Mississippi courts should have considered the relevance of *state*-court decisions in *Flowers*, those are irrelevant under AEDPA. *See, e.g.*, *Kernan v. Cuero*, 583 U.S. 1, 8 (2017) (per curiam) (holding "state-court decisions" do "not constitute 'clearly established Federal law, as determined by the Supreme Court'").

In sum, the Mississippi Supreme Court did not err by failing to consider evidence of pretext or evidence from the *Flowers* litigation in rejecting Pitchford's *Batson* claim. *A fortiori*, the court's decision was not "contrary to" or an "unreasonable application" of *Batson*.

No. 23-70009

## D.

Finally, to the extent the district court relied on 28 U.S.C. § 2254(d)(2) in granting habeas relief, it erred.[10]

In a *Batson* case, a habeas petitioner can prevail under § 2254(d)(2) by showing that "the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary." *Hoffman v. Cain*, 752 F.3d 430, 448–49 (5th Cir. 2014). "[W]e presume the [state] court's factual findings to be sound unless [the movant] rebuts the 'presumption of correctness by clear and convincing evidence.'" *Miller-El II*, 545 U.S. at 240 (quoting 28 U.S.C. 2254(e)(1)). "A state trial court's finding of the absence of discriminatory intent is 'a pure issue of fact' that is accorded great deference. . . ." *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005) (quoting *Hernandez v. New York*, 500 U.S. 352, 364–65 (1991)). And, as explained above, a court is not required to make factual findings on the record during *Batson* step three. *See Perry*, 35 F.4th at 331 (explaining that "an implicit finding by a trial court that the [prosecution's] explanation was credible" is sufficient).

As discussed, the state trial court completed all three steps of *Batson*. The judge ruled that Pitchford made a *prima facie* showing of discrimination, the State provided race-neutral reasons, and the only objection Pitchford eventually raised was that one of the 14 jurors was black "whereas this county is approximately . . . 40 percent[.]" *See Pitchford*, 45 So. 3d at 225–26. The trial judge heard that information, found that "all the reasons" given by the State "were race neutral," and stated that "the Court finds there to be no

---

[10] Although the district court cited (d)(2) in passing, it is unclear whether the court actually relied on that subsection in granting habeas.

*Batson* violation." The judge therefore ruled that Pitchford did not "prove the existence of purposeful discrimination." *Batson*, 476 U.S. at 93 (quotation omitted).

All the judge had available to weigh against the State's race-neutral reasons was Pitchford's conclusory argument that 40% of the county was black and his contention that *Miller-El II* "reversed a conviction" where the prosecution "left either one or two black jurors on the venire." *See Miller-El II*, 545 U.S. at 231. It was not clearly unreasonable for the judge to find that such bare assertions failed to overcome the State's race-neutral reasons.

As for the Mississippi Supreme Court, it acted reasonably in not considering Pitchford's pretext arguments because its "'[p]recedent mandates that [it] not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs.'" *In re Adoption of Minor Child*, 931 So. 2d 566, 579 (Miss. 2006) (quoting *Chantey Music Pub., Inc. v. Malaco, Inc.*, 915 So. 2d 1052, 1060 (Miss. 2005)); *see also Manning*, 735 So. 2d at 339 (holding that "[i]t is incumbent upon a defendant claiming that proffered reasons are pretextual to raise the argument before the trial court" and that "[t]he failure to do so constitutes waiver" (quotation omitted)).

In sum, we conclude that Pitchford was not entitled to habeas corpus relief under 28 U.S.C. § 2254(d)(2).

## IV.

We REVERSE the judgment granting Pitchford a writ of habeas corpus and RENDER judgment dismissing Pitchford's petition.