(Slip Opinion) OCTOBER TERM, 2025 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## PITCHFORD *v.* CAIN

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 24–7351. Argued March 31, 2026—Decided May 28, 2026

In 2004, two black teenagers, Terry Pitchford and Eric Bullins, robbed a grocery store near Grenada, Mississippi. During the robbery, Bullins shot and killed the white store owner. Bullins reached a plea agreement and received a 20-year sentence for the homicide. The State charged Pitchford with capital murder and sought the death penalty. During jury selection at Pitchford's trial, the prosecutor used peremptory strikes against four of the five black potential jurors. As this Court held in *Batson* v. *Kentucky*, 476 U. S. 79, the Equal Protection Clause bars prosecutors from exercising peremptory challenges based on race. In *Batson* and subsequent cases, the Court has spelled out a three-step process for a trial court to determine whether a prosecutor employed a peremptory challenge based on race. Here, Pitchford's counsel raised an objection under *Batson* and made a prima facie showing that the strikes of the four black jurors were based on race (step one). The trial court asked the prosecutor for race-neutral reasons for each strike, and the prosecutor offered reasons (step two). The trial court declared the prosecutor's stated reasons to be race neutral, but the trial court did not afford defense counsel an opportunity to rebut the prosecutor's race-neutral reasons as pretextual (step three); nor did it make any findings regarding whether the prosecutor's stated reasons were pretextual. At the close of jury selection, defense counsel sought to raise the *Batson* issue again, but the trial court twice cut off defense counsel. The empaneled jury, consisting of 11 white jurors and 1 black juror, convicted Pitchford of capital murder and sentenced him to death.

On direct appeal, the Mississippi Supreme Court concluded that Pitchford had waived his *Batson* objection by not arguing to the trial court that the prosecutor's proffered explanations were pretextual.

Pitchford later filed a habeas corpus petition in U. S. District Court. Applying the applicable standard to obtain federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996, the District Court concluded that the Mississippi Supreme Court had unreasonably applied *Batson* and had unreasonably determined that Pitchford waived his *Batson* objection. The District Court explained that no state court had conducted the full three-step *Batson* inquiry, and that the trial court had "thwarted" the "attempt by Pitchford's counsel to argue pretext." 706 F. Supp. 3d 614, 624. The Fifth Circuit reversed the District Court, concluding that the Mississippi Supreme Court's waiver finding was reasonable.

*Held*: The Mississippi Supreme Court unreasonably applied the clearly established *Batson* precedents and unreasonably determined that Pitchford waived his opportunity to rebut the prosecutor's asserted race-neutral reasons for the peremptory strikes of four black prospective jurors. Pp. 6–9.

(a) "[T]he job of enforcing *Batson* rests first and foremost with trial judges." *Flowers* v. *Mississippi*, 588 U. S. 284, 302. The bedrock principle that a party ordinarily must raise an objection in the trial court in order to preserve the issue for appeal applies in the *Batson* context. See *Ford* v. *Georgia*, 498 U. S. 411, 423. But here, the Mississippi trial court erroneously omitted *Batson*'s third step: The trial court did not afford Pitchford's counsel a sufficient opportunity to rebut the prosecutor's proffered race-neutral reasons for striking the four black jurors and never determined whether the prosecutor's stated reasons were pretextual. Pitchford's counsel did not waive the *Batson* argument. As the U. S. District Court explained, "Pitchford *did* object to the explanations provided when he raised the issue again." 706 F. Supp. 3d, at 624. The Mississippi trial court explicitly assured Pitchford's counsel that the *Batson* objection was preserved, stating: "I think you already made those, and they are clear in the record." 1 App. 175. Especially given that specific assurance by the trial court, it was unreasonable for the Mississippi Supreme Court to conclude that Pitchford waived the *Batson* argument.

The State's argument that Pitchford preserved his *Batson* objection but nonetheless somehow waived his *Batson* pretext argument does not make much sense and is not a reasonable reading of this record. At that key point in the jury-selection process—after the prosecutor had asserted facially race-neutral reasons for the peremptory strikes— the *Batson* objection *was* a *Batson* pretext argument. Defense counsel's rebuttal necessarily would include a pretext argument—specifically, that similarly situated white jurors were not challenged by the prosecutor. If allowed to continue, Pitchford could have argued that the prosecutor did not challenge white jurors similarly situated to the

Syllabus

challenged black jurors, which is precisely what Pitchford's post-trial motion later did argue. In this case, the ordinary trial-court procedure for resolving *Batson* claims at step three never occurred—notwithstanding the repeated efforts of Pitchford's counsel to pursue and preserve the *Batson* objection. Pp. 6–8.

(b) The Antiterrorism and Effective Death Penalty Act standard for reviewing claims on federal habeas is deferential to the state court, but deference does not mean abdication, and "deference does not by definition preclude relief." *Miller-El* v. *Dretke*, 545 U. S. 231, 240. In light of the entire record in this case, the Court agrees with the U. S. District Court that the Mississippi Supreme Court unreasonably applied the clearly established *Batson* precedents and unreasonably determined that Pitchford waived his opportunity to rebut the prosecutor's asserted race-neutral reasons for the peremptory strikes of four black prospective jurors. 28 U. S. C. §§2254(d)(1), (2). P. 8.

126 F. 4th 422, reversed and remanded.

KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SOTOMAYOR, KAGAN, and JACKSON, JJ., joined. GORSUCH, J., filed a dissenting opinion, in which THOMAS, ALITO, and BARRETT, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the
United States Reports. Readers are requested to notify the Reporter of
Decisions, Supreme Court of the United States, Washington, D. C. 20543,
pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

_____

No. 24–7351

_____

## TERRY PITCHFORD, PETITIONER *v.* BURL CAIN, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[May 28, 2026]

JUSTICE KAVANAUGH delivered the opinion of the Court.

In *Batson* v. *Kentucky*, 476 U. S. 79 (1986), this Court held that the Equal Protection Clause bars prosecutors from exercising peremptory challenges based on race. In *Batson* and subsequent cases, the Court has spelled out how a trial court should determine whether a prosecutor employed a peremptory challenge based on race. After the defendant makes a prima facie showing that a peremptory strike was based on race (step one), the prosecutor must provide a race-neutral reason for the challenged strike (step two). Then, at step three, defense counsel has an opportunity to rebut the prosecutor's race-neutral reason as pretextual, and the trial court in turn decides whether the prosecutor's race-neutral reason for striking a juror is pretextual "in light of all evidence with a bearing on it." *Miller-El* v. *Dretke*, 545 U. S. 231, 252 (2005); see *Flowers* v. *Mississippi*, 588 U. S. 284, 301–303 (2019); *Snyder* v. *Louisiana*, 552 U. S. 472, 478–479 (2008).

In this capital case, the Mississippi trial court never conducted the essential third step of the *Batson* inquiry. The Mississippi Supreme Court affirmed Pitchford's

conviction and death sentence—but only by concluding that Pitchford had waived his opportunity to rebut the prosecutor's race-neutral reasons as pretextual at *Batson*'s third step.  On habeas review, the U. S. District Court determined that Pitchford had not waived rebuttal and that the Mississippi Supreme Court's contrary conclusion was unreasonable.  See 28 U. S. C. §2254(d).  The District Court therefore granted relief to Pitchford.  But the U. S. Court of Appeals for the Fifth Circuit reversed.  This Court granted certiorari, 607 U. S. 1094 (2025), and we now reverse the judgment of the U. S. Court of Appeals.

I

A

The relevant factual background is as follows:  In 2004, two black teenagers, Terry Pitchford and Eric Bullins, robbed a grocery store near Grenada, Mississippi—a small town in Grenada County off I–55 in north-central Mississippi.  Grenada County was then about 60 percent white and 40 percent black.

At the time of the robbery in 2004, Bullins was 16, and Pitchford was 18.  During the robbery, Bullins fired three shots at the store owner, who was a white man, and killed him. *Pitchford* v. *State*, 45 So. 3d 216, 223 (Miss. 2010); 706 F. Supp. 3d 614, 617 (ND Miss. 2023); 126 F. 4th 422, 424 (CA5 2025); Brief for Respondents 5.

Bullins, who fired the fatal shots, reached a plea agreement and received a 20-year sentence for the homicide.  1 App. 294, n. 46.  Pitchford also fired a gun, which was loaded with rat shot.  It has been disputed whether he shot at the store owner or fired his gun into the store floor.  Cf. 706 F. Supp. 3d, at 617.  In any event, for Pitchford, the State charged capital murder and sought the death penalty.

During jury selection at Pitchford's trial in Mississippi state court, the prosecutor used peremptory strikes against

four of the five black potential jurors. In response, Pitchford's counsel raised a *Batson* objection. 1 App. 167–168. The trial court asked the prosecutor for race-neutral reasons for striking each of the four black potential jurors. According to the prosecutor, one had returned 15 minutes late to court, two others had brothers convicted of violent offenses, and the fourth, like Pitchford, was young, unmarried, and a father. *Id.*, at 169–170. As the prosecutor offered reasons for striking each of the jurors, the trial court declared each to be race neutral. Upon hearing the prosecutor's reason for the last strike, the trial court stated that "[t]he Court finds that to be race neutral as well," and pivoted immediately to the defense's peremptory strikes. *Id.*, at 170. At that time, the trial court did not afford defense counsel an opportunity to rebut as pretextual the prosecutor's race-neutral reasons for striking the four black jurors, nor did the trial court make any findings regarding whether the prosecutor's stated reasons were pretextual. In other words, as the U. S. District Court later explained on habeas review, the trial court "full-stop ended its *Batson* analysis" at step two and never proceeded to step three. 706 F. Supp. 3d, at 623.

At the close of jury selection, defense counsel sought to raise the *Batson* issue again. But the trial court twice cut off defense counsel and ended the inquiry before counsel could try to rebut as pretextual the race-neutral reasons articulated by the prosecution: "I think you already made those, and they are clear in the record. For the reasons previously stated, first the Court finds there to be no—well, all the reasons were race neutral as to members that were struck by the district attorney's office. And so the, the Court finds there to be no *Batson* violation." 1 App. 175.[1]

―――――――――

[1] During jury selection, Pitchford also separately raised a fair cross-section argument. See, *e.g.*, *Duren* v. *Missouri*, 439 U. S. 357, 363–364 (1979). That claim is not at issue here.

The empaneled jury consisted of 11 white jurors and 1 black juror. The jury convicted Pitchford of capital murder and sentenced him to death.

In the trial court, Pitchford then filed a motion for a new trial that raised numerous issues, including *Batson*. As relevant here, Pitchford advanced the argument that he was prevented from making during jury selection—that the prosecutor's stated reasons for the peremptory challenges were pretextual because the prosecutor "deselected black people from the jury panel who had the same familial, living, social or marital circumstances as whites who were not deselected, which is a clear violation of *Batson* and *Miller-El.*" 1 App. 184. The trial court summarily denied Pitchford's motion.

B

For the last 20-plus years while in prison, Pitchford has pursued appellate and collateral challenges to his conviction and death sentence. In his direct appeal to the Mississippi Supreme Court, Pitchford renewed his *Batson* argument—in particular, that the prosecutor's purported race-neutral reasons for striking the four black prospective jurors were pretextual. In a divided opinion, the Mississippi Supreme Court concluded that Pitchford had waived his *Batson* objection by not arguing to the trial court that the prosecutor's proffered explanations were pretextual. See 45 So. 3d, at 227–228. Justice Graves, joined by Justice Kitchens, dissented, reasoning that Pitchford had not waived his *Batson* objection and that the prosecutor's stated reasons for striking the black jurors were pretextual. *Id.*, at 260–268.

Pitchford later filed a habeas corpus petition in the U. S. District Court for the Northern District of Mississippi. To obtain federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996, Pitchford was required to clear a high bar—namely, to establish that the

Mississippi Supreme Court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U. S. C. §§2254(d)(1), (2).

Applying that AEDPA standard, the U. S. District Court concluded that the Mississippi Supreme Court had unreasonably applied *Batson* and had unreasonably determined that Pitchford waived his *Batson* objection. The District Court stated: "Simply put, no state court—whether it be the majority in the Mississippi Supreme Court or the trial court—conducted a full three-step *Batson* inquiry on the State's use of its peremptory strikes . . . . The trial court, seemingly eager to proceed to the case itself, quickly deemed the reasons as race-neutral and moved on." 706 F. Supp. 3d, at 626. The District Court further explained that Pitchford had not waived his *Batson* claim. The District Court noted that Pitchford initially raised a *Batson* objection. And after the trial court completed the jury selection process, Pitchford "raised the issue again and confirmed it was on the record." *Id.*, at 624. But the Mississippi trial court "thwarted," although "likely unintentionally," the "attempt by Pitchford's counsel to argue pretext," thus affording Pitchford "no chance to rebut the State's explanations and prove purposeful discrimination." *Ibid.*

For those reasons, the U. S. District Court ruled that the Mississippi Supreme Court unreasonably applied the clearly established *Batson* precedents and unreasonably determined that Pitchford had waived his opportunity to rebut the prosecutor's proffered race-neutral reasons at *Batson*'s third step. *Id.*, at 627. The U. S. Court of Appeals then reversed the District Court, concluding that the Mississippi Supreme Court's waiver finding was reasonable. See 126 F. 4th, at 431.

## II

As this Court has stated, "America's trial judges operate at the front lines of American justice," and "the job of enforcing *Batson* rests first and foremost with trial judges." *Flowers* v. *Mississippi*, 588 U. S. 284, 302 (2019). But here, as the U. S. District Court explained, the Mississippi trial court erroneously omitted *Batson*'s third step: In particular, the trial court did not afford Pitchford's counsel a sufficient opportunity to rebut the prosecutor's proffered race-neutral reasons for striking the four black jurors and never determined whether the prosecutor's stated reasons were pretextual. And as the U. S. District Court further stated, the Mississippi Supreme Court's conclusion that Pitchford waived his opportunity to rebut the prosecutor's proffered race-neutral reasons was unreasonable.

To be clear, in state and federal courts, a party ordinarily must raise an objection in the trial court in order to preserve the issue for appeal. The *Batson* context is no exception to that bedrock principle. See *Ford* v. *Georgia*, 498 U. S. 411, 423 (1991).[2]

But as the U. S. District Court explained, "Pitchford *did* object to the explanations provided when he raised the issue again and confirmed it was on the record. Perhaps Pitchford's counsel should have been more assertive, but . . . there was no waiver by Pitchford." 706 F. Supp. 3d 614, 624 (ND Miss. 2023).

Notably, moreover, the Mississippi trial court explicitly assured Pitchford's counsel that the *Batson* objection was preserved. When Pitchford's counsel attempted to raise *Batson* again after the prosecutor's race-neutral explanations for the four peremptory strikes of black jurors, the trial court responded: "I think you already made those,

_____

[2] In the trial court, a defendant might explicitly waive any *Batson* objection or might forfeit a *Batson* objection by, for example, failing to timely assert it.

and they are clear in the record." 1 App. 175. Especially in light of that specific assurance by the trial court, it was unreasonable for the Mississippi Supreme Court to conclude that Pitchford waived the *Batson* argument.

To try to overcome those problems with the Mississippi Supreme Court's waiver determination, the State asserts that Pitchford's defense counsel preserved a *Batson* objection but not a *Batson* pretext argument. That slices *Batson* way too thin. At that key point in the jury-selection process—after the prosecutor had asserted facially race-neutral reasons for the peremptory strikes—the *Batson* objection *was* a *Batson* pretext argument. In other words, defense counsel's rebuttal necessarily would include a pretext argument—specifically, that similarly situated white jurors were not challenged by the prosecutor. See *Flowers*, 588 U. S., at 301–302. If allowed to continue, Pitchford therefore could have argued that the prosecutor did not challenge white jurors similarly situated to the challenged black jurors, which is precisely what Pitchford's post-trial motion later did argue. In that post-trial motion, Pitchford contended that "the prosecution's state of mind was clearly racially discriminatory as it deselected black people from the jury panel who had the same familial, living, social or marital circumstances as whites who were not deselected, which is a clear violation of *Batson* and *Miller-El*." 1 App. 184. The bottom line: The State's argument—that Pitchford preserved his *Batson* objection but nonetheless somehow waived his *Batson* pretext argument—does not make much sense and is not a reasonable reading of this record.[3]

---

[3] For its part, the dissent speculates that Pitchford's counsel, at step three, was seeking to make only a statistical argument, not an argument that similarly situated white jurors were not challenged. *Post*, at 7–8 (opinion of GORSUCH, J.). To begin, that speculation does not reflect how the *Batson* inquiry ordinarily operates. At step three, after the

We need not belabor the matter. After a prosecutor asserts race-neutral reasons for a peremptory strike, the defense counsel must at least have an opportunity to argue that the asserted race-neutral reasons were not the actual reasons—that is, the reasons were pretextual. Then, the trial court can determine whether those asserted reasons were the actual reasons or instead were pretextual. In this case, whether due to confusion, oversight, an overly hurried jury selection process, or some other cause, things broke down, and the ordinary trial-court procedure for resolving *Batson* claims at step three never occurred— notwithstanding the repeated efforts of Pitchford's counsel to pursue and preserve the *Batson* objection.

To be sure, the AEDPA standard for reviewing claims on federal habeas is deferential to the state court. See *Williams* v. *Taylor*, 529 U. S. 362, 412–413 (2000); *Harrington* v. *Richter*, 562 U. S. 86, 102–103 (2011); *Brown* v. *Davenport*, 596 U. S. 118, 135 (2022); *Klein* v. *Martin*, 607 U. S. 213, 220–221 (2026) (*per curiam*). But deference does not mean abdication, and "deference does not by definition preclude relief." *Miller-El* v. *Dretke*, 545 U. S. 231, 240 (2005) (quotation marks and alteration omitted). In light of the entire record in this case, we agree with the U. S. District Court that the Mississippi Supreme Court unreasonably applied the clearly established *Batson* precedents and unreasonably determined that Pitchford waived his opportunity to rebut the prosecutor's asserted race-neutral reasons for the peremptory strikes of four black prospective jurors. 28 U. S. C. §§2254(d)(1), (2).

———————

prosecution has offered its facially race-neutral reasons, defense counsel typically tries to show (because it is often the only way of proving a *Batson* violation at step three) that similarly situated white jurors were treated differently and not challenged. In any event, the more fundamental point here is that the Mississippi trial court prevented Pitchford's counsel from pursuing a *Batson* argument at step three.

We reverse the judgment of the U. S. Court of Appeals for the Fifth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 24–7351

_____

TERRY PITCHFORD, PETITIONER *v.* BURL CAIN,
COMMISSIONER, MISSISSIPPI DEPARTMENT
OF CORRECTIONS, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[May 28, 2026]

JUSTICE GORSUCH, with whom JUSTICE THOMAS, JUSTICE
ALITO, and JUSTICE BARRETT join, dissenting.

Under the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA), federal courts may grant habeas corpus
relief to state prisoners only in narrowly defined circum-
stances. Appreciating as much, this Court has repeatedly
overturned lower-court decisions that have failed to respect
AEDPA's constraints. See, *e.g.*, *Klein* v. *Martin*, 607 U. S.
213 (2026) (*per curiam*); *Dunn* v. *Reeves*, 594 U. S. 731
(2021) (*per curiam*); *Mays* v. *Hines*, 592 U. S. 385 (2021)
(*per curiam*). Today, the Court looks past those constraints,
and its own admonitions, to issue a judgment that AEDPA
precludes. Respectfully, I dissent.

I

In 2004, Terry Pitchford and an accomplice robbed a store
in Mississippi. At the end of it, the store's owner, Reuben
Britt, lay dead. *Pitchford* v. *State*, 45 So. 3d 216, 222–223
(Miss. 2010) (en banc). A state-court trial followed in which
a jury found Mr. Pitchford guilty of murder and sentenced
him to death, concluding that he "actually killed R[e]uben
Britt, . . . intended the killing of R[e]uben Britt[,] . . . and

. . . contemplated that lethal force would be employed." Trial Tr. 812.[1]

This case concerns what happened during jury selection. Midway through that process, Mr. Pitchford's trial team objected that prosecutors were using their peremptory strikes to exclude black prospective jurors in violation of *Batson* v. *Kentucky*, 476 U. S. 79 (1986). 1 App. 167–168.

To resolve objections like that, *Batson* provides a three-step framework. First, a defendant must make a "prima facie showing" that prosecutors have struck prospective jurors "on the basis of race." *Snyder* v. *Louisiana*, 552 U. S. 472, 476 (2008) (internal quotation marks omitted). One common way to meet this burden is statistical—if prosecutors have struck black prospective jurors at a higher rate than white prospective jurors, that may suggest discrimination. *Flowers* v. *Mississippi*, 588 U. S. 284, 302 (2019). Another common way to meet this burden is comparative— if "side-by-side comparisons" show prosecutors have struck black prospective jurors while accepting similar white prospective jurors, that too may suggest discrimination. *Ibid.*

Should a defendant make a prima facie case, the court then moves to step two. There, "the prosecution must offer a race-neutral basis" for each strike. *Snyder*, 552 U. S., at 476–477 (internal quotation marks omitted). If the prosecution does so, the court proceeds to step three: The defendant can try to rebut the prosecution's race-neutral reasons as "pretextual," and ultimately the court must determine whether the prosecution's strikes were in fact based on

———————

[1] To be sure, Mr. Pitchford has advanced various accounts of what happened the day of the robbery. Initially, he denied he was present at all. See 1 App. 195. Later, he said he only fired his gun into the floor and did not shoot Mr. Britt. *Ibid.*; *id.*, at 329, n. 54. But later still, he acknowledged the existence of "admissible proof" showing he did shoot Mr. Britt. *Id.*, at 329; see also *Pitchford*, 45 So. 3d, at 260. And, whatever his view of the facts may be, there is no dispute that a jury found he "inten[tionally]" and "actually killed R[e]uben Britt." Trial Tr. 812.

purposeful discrimination. *Id.*, at 477, 485. As at step one, defendants commonly use statistical and comparative juror arguments at step three.

In this case, Mr. Pitchford made his prima facie case based on a statistical argument. The prosecution, he noted, had refrained from striking only "one African-American juror out of the five that ha[d] thus far . . . arisen on the venire." 1 App. 167. And, Mr. Pitchford continued, "this is already a disproportiona[tely] white jury [pool] for the population of this county." *Id.*, at 167–168.

The trial judge agreed that Mr. Pitchford had made a prima facie case under *Batson* and thus required the State to offer race-neutral reasons for each of the peremptory strikes it had used on black prospective jurors. The State did so. One prospective juror, it said, had returned late to court after lunch break and had a history of mental problems. 1 App. 86–88, 169. Two had brothers who had been convicted of violent offenses. *Id.*, at 169–170. Another "had no opinion on the death penalty." *Id.*, at 170. Plus, he was similar to Mr. Pitchford in several ways: They were "approximately the [same] age," they "both ha[d] children about the same age," and they "both ha[d] never been married." *Ibid.*

The judge accepted these reasons as race neutral and directed the parties to resume jury selection. *Ibid.* Mr. Pitchford did not object to that direction or otherwise seek to make a step three showing. Instead, after jury selection concluded, Mr. Pitchford's trial team approached the bench. There, they sought "to reserve . . . [their] *Batson* objection." *Id.*, at 175. The court agreed the *Batson* objection was "in the record," but "f[ound] there to be no *Batson* violation." *Ibid.* At that point, defense counsel reiterated their earlier statistical argument. "[O]ne," "[a]nd only one," of the final jury panel selected for service, Mr. Pitchford's lawyers said, was black even though the "county is approximately . . . 40 percent black." *Id.*, at 176.

After that exchange, the case proceeded to trial and, in the end, the jury returned a guilty verdict. Seeking to undo that verdict later, Mr. Pitchford filed a motion for a new trial based in part on his statistical *Batson* argument. 1 App. 179, 184, 186. But for the first time, he also briefly introduced a new comparative juror argument, asserting in one sentence that the prosecution had improperly "deselected black people from the jury panel who had the same familial, living, social or marital circumstances as whites who were not deselected." *Id.*, at 184.

After the trial court denied Mr. Pitchford's motion, he appealed to the Mississippi Supreme Court. There, Mr. Pitchford continued to press the statistical argument he had made during jury selection. *Id.*, at 209–210, 223–225. But now he directed most of his efforts to the separate comparative juror argument he introduced for the first time after trial, drawing detailed comparisons in his appellate brief between white jurors who were not struck and the four black jurors who were. *Id.*, at 210–223.

The Mississippi Supreme Court analyzed Mr. Pitchford's *Batson* claim this way. At step one, the court upheld the trial court's ruling that Mr. Pitchford's statistical argument sufficed to make out a prima facie case. *Pitchford*, 45 So. 3d, at 224–226. It also upheld the trial court's step two ruling that the prosecution's reasons were race neutral. *Id.*, at 226–227. And when it came to step three, the Mississippi Supreme Court held that Mr. Pitchford hadn't carried his ultimate burden to show purposeful discrimination. See *id.*, at 227–228.

He hadn't, the court ruled, because he had failed to rebut the State's step two submission in the trial court. Put simply, Mr. Pitchford had "waive[d]" any step three argument. *Id.*, at 227, n. 16 (internal quotation marks omitted). Yes, Mr. Pitchford "devoted a considerable portion" of his appellate brief to a step three comparative juror argument, expanding on the one-sentence version he introduced for

the first time in his post-trial motion. *Id.*, at 227. But, the court held, Mr. Pitchford had not adequately presented this argument to the trial court in the first instance. *Ibid.* And, the court added, it could "not now fault the trial judge with failing to discern whether the State's race-neutral reasons were overcome by rebuttal evidence and argument never presented." *Ibid.*

Following his loss in state court, Mr. Pitchford sought habeas relief in federal court. Among other things, he argued that the Mississippi Supreme Court's waiver holding was unreasonable. The district court agreed and granted relief, explaining that it "view[ed] the record a bit differently" than the Mississippi Supreme Court had. App. to Pet. for Cert. 22. In the district court's view, the state trial court had "failed to provide" Mr. Pitchford with any "opportunity" to make a step three argument "rebut[ting]" the prosecution's proffered race-neutral reasons. *Ibid.* The Fifth Circuit reversed, holding that the Mississippi Supreme Court's waiver finding was both reasonable and, indeed, correct. 126 F. 4th 422, 429, 431 (2025). We granted certiorari. 607 U. S. 1094 (2025).

## II

To secure federal habeas relief under AEDPA, Mr. Pitchford must shoulder a considerable burden. Pursuant to 28 U. S. C. §2254(a), he must prove that he is being held in custody in violation of the Constitution or federal laws. In this case, that means Mr. Pitchford must show his trial was in fact infected by a *Batson* violation. In addition to that showing, he must make one of two further showings. Under §2254(d)(1), he must demonstrate that the Mississippi Supreme Court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." Or, under §2254(d)(2), he must demonstrate that the court's "decision was based on an unreasonable determination of

the facts in light of the evidence presented" in state court. See *Klein*, 607 U. S., at 220.

This Court has long recognized the rigor of §2254(d)'s requirements. Showing legal error, we have said, isn't enough to satisfy §2254(d)(1). Instead, a petitioner must demonstrate that "no fairminded jurist could reach the state court's conclusion under this Court's precedents." *Brown* v. *Davenport*, 596 U. S. 118, 135 (2022) (internal quotation marks and alterations omitted). Likewise, to satisfy §2254(d)(2), "it is not enough to show that reasonable minds reviewing the record might disagree about the [factual] finding in question." *Ibid.* (internal quotation marks omitted). Instead, the finding must have so little support in the record that only an "unreasonable" jurist could make it. §2254(d)(2); see also §2254(e)(1).

As I see things, Mr. Pitchford has failed to satisfy either of these standards. Start with §2254(d)(1). The Court today seems to think the Mississippi Supreme Court "unreasonably" applied our clearly established precedents by concluding that Mr. Pitchford "waived" any step three argument. *Ante,* at 8. But in *Ford* v. *Georgia*, 498 U. S. 411 (1991), we said that States enjoy authority to fashion their own preservation rules governing *Batson* claims. 498 U. S., at 423. And taking us at our word, the Mississippi Supreme Court has adopted just such a rule: Any *Batson* argument not adequately presented in a trial court is "waived." See *Pitchford*, 45 So. 3d, at 227, and n. 16 (collecting cases). Nothing about that rule defies our clearly established precedents.[2]

———————
[2] Where Mississippi preservation law operates on an argument-by-argument basis, we have sometimes said ours operates on a claim-by-claim basis. See *Lebron* v. *National Railroad Passenger Corporation*, 513 U. S. 374, 379 (1995). And what Mississippi calls "waiver," we would ordinarily call "forfeiture." See *Hamer* v. *Neighborhood Housing Servs. of Chicago*, 583 U. S. 17, 20, n. 1 (2017). But our preferences on these matters

Nor does the Mississippi Supreme Court's application of its rule offend any of our precedents. The court recognized that Mr. Pitchford had preserved a step one statistical argument, but held that he had waived the step three comparative juror argument he sought to press on appeal by failing to raise it during jury selection or trial. See *id.*, at 227–228. The Court today suggests this analysis "slices *Batson . . .* too thin[ly]." *Ante,* at 7. Yet it nowhere pauses to identify any of our clearly established precedents the Mississippi Supreme Court supposedly defied or mistook.

Turn next to §2254(d)(2). The Court concludes that the Mississippi Supreme Court's waiver holding rests on an "unreasonable" reading of the trial record. *Ante,* at 6–7. After all, the Court observes, Mr. Pitchford didn't entirely forgo a comparative juror argument in the trial court; his motion for a new trial included a line devoted to just that topic. *Ante,* at 7; 1 App. 184. But be that as it may, the Court does not (and cannot) explain how it was unreasonable for the Mississippi Supreme Court to determine that Mr. Pitchford waived a *Batson* argument he never made during jury selection and introduced for the first time only in a single sentence in a post-trial motion.

Perhaps sensing the problem, the Court ultimately rests its §2254(d)(2) analysis on a different ground. Citing the exchange that took place at the end of jury selection, the Court says that the state trial court "explicitly assured" defense counsel that the "*Batson* objection was preserved." *Ante,* at 6. And this assurance, the Court reasons, must mean that Mr. Pitchford adequately preserved the step three comparative juror argument he sought to make before the Mississippi Supreme Court.

---

do not bind the State. See *Ford*, 498 U. S., at 423. And for that reason, I use the term "waiver" here the same way the Mississippi Supreme Court did.

But that much is far from clear. Rather than announcing an intent to raise a new step three comparative juror argument at the conclusion of jury selection, Mr. Pitchford's attorneys said only that they "want[ed] to reserve . . . [their] *Batson* objection," which sounds like a reference to the step one statistical argument they had made earlier. 1 App. 175. Supporting that inference, counsel proceeded to repeat the same statistical argument they had already made. *Id.*, at 175–176. True, resting on that point alone might not have been the best move. But considering what happened later, it hardly seems an unlikely explanation. After his appeal to the Mississippi Supreme Court failed, Mr. Pitchford sought state post-conviction relief. And in support of that effort, one of his trial attorneys expressly represented that she had "'failed to challenge the prosecution's reasons as pretextual at trial'" and that she "did not . . . do anything to . . . reserve" the pretext argument Mr. Pitchford sought to press on appeal. App. to Brief for Respondents 40a, 77a.

Of course, Mr. Pitchford now advances a very different reading of the trial court record. Now, he says his lawyers did seek to preserve a step three comparative juror argument at the conclusion of jury selection. To be sure, Mr. Pitchford admits, his lawyers did not ask the trial court to compare any seated white juror with any struck black juror. But, he suggests, that is only because the court cut off his attorneys and didn't allow them to get the argument out. See Brief for Petitioner 33–35.

That account is difficult to credit as well. Not only is it inconsistent with his own attorney's representation that she failed to preserve a pretext argument. Nothing in the record indicates a trial court seeking to thwart defense counsel's ability to represent their client. In fact, the record shows that Mr. Pitchford's attorneys were more than capable of speaking up when they had something to say. For just one example, consider the page of the transcript following the initial *Batson* exchange. On that one page alone,

counsel cut off another lawyer, raised an objection, and then interrupted the trial judge mid-sentence to make another point. 1 App. 171. There are plenty of other examples like it. See, *e.g.*, *id.*, at 158–160, 164–165.

Put simply, Mr. Pitchford's account of a muzzled defense team is hard to square with the record. But even if it were a plausible account, that still would not be enough. Under §2254(d)(2), a federal habeas petitioner must show not only that his version of events is plausible. He must show that the record "compel[s]" it. *Rice* v. *Collins*, 546 U. S. 333, 341 (2006). And no matter how generously one interprets the record in this case, that is a standard Mr. Pitchford cannot meet. It is just as reasonable, if not more so, to conclude that Mr. Pitchford's attorneys meant to "reserve" only the statistical argument they had made at step one—not a step three comparative juror argument they never mentioned at any point during jury selection or trial. 1 App. 175. Reflecting as much, not only did the Mississippi Supreme Court read the record differently than Mr. Pitchford now does. The Fifth Circuit did too, holding that the Mississippi Supreme Court's waiver conclusion was not only reasonable but correct. 126 F. 4th, at 429.

In response to all this, the Court insists that "defense counsel typically" make a step three comparative juror argument before the trial court. *Ante,* at 7–8, n. 3. Perhaps that is right. But the Court points to nothing in the record showing that Mr. Pitchford's counsel made such an argument in this case. The Court reasserts, too, its "fundamental point" that, even if Mr. Pitchford's counsel failed to present a step three comparative juror argument, it was only because the trial court "prevented" them from doing so. *Ante,* at 8, n. 3. But the Court's repetition of its point serves only to highlight its failure to cite anything in the record supporting, much less compelling, its conclusion. See *Rice*, 546 U. S., at 341.

\*

In short, I respectfully dissent because, as I see it, the Court's opinion errs on the law and the factual record alike. But if the Court's decision is mistaken, at least its impact is limited. Precisely because so many of our AEDPA precedents go unmentioned, I do not read today's decision as calling any of them into question. Notably, too, the Court issues a narrow judgment, holding only that Mr. Pitchford did not waive a step three *Batson* argument without dictating what further proceedings may be appropriate on remand consistent with §2254.